**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

| In re | Case No. 12-39329-BKC-EPK |
|---|---|
| VICOR TECHNOLOGIES, INC., | Involuntary Chapter 7 |
| Alleged Debtor. | |

**PETITIONING CREDITORS' EMERGENCY MOTION FOR (I) APPOINTMENT OF
INTERIM TRUSTEE AND WAIVER OF BOND REQUIREMENT OR, IN THE
ALTERNATIVE, (II) RESTRICTION OF ALLEGED DEBTOR'S RIGHTS TO TRANSFER
OR DISPOSE OF CERTAIN INTELLECTUAL PROPERTY UNDER 11 U.S.C. § 303(F)**

**(Emergency Hearing Requested)**

The petitioning creditors identified below (the "Petitioning Creditors"),[1] by and through

undersigned counsel and pursuant to 11 U.S.C. §§ 303(f) and (g) and 105(a), Federal Rule of

Bankruptcy Procedure 2001, and Local Rule 9075-1, move on an emergency basis for (i)

appointment of an interim trustee and waiver of the bond requirement, or, in the alternative, (ii)

restriction of the Alleged Debtor's rights to transfer or dispose of its intellectual property, and in

support thereof state as follows:

**PRELIMINARY STATEMENT**

The Alleged Debtor, Vicor Technologies, Inc. ("Vicor"), is a Boca Raton-based publicly

traded company (OTCBB:VCRT) formed in 2000 to develop and commercialize certain patented

diagnostic medical technology. From 2003 through 2011, Vicor and its management team worked to

commercialize this cutting-edge technology by developing marketable products for use by

physicians in diagnosing cardiovascular disease. Though Vicor obtained the requisite patents and

regulatory approvals to market its diagnostic products, and began generating actual operating

revenue in 2010, it was unable to obtain the requisite capital necessary to sustain its operations and

---

[1]      The 13 petitioning creditors are David H. Fater, Richard M. Cohen, T.J. Bohannon, Inc., Target Health, Inc.,
Robin Schoen Public Relations, Sclafani & Associates, P.A., Jerry M. Anchin, Dr. David Krasnow, Christopher

quickly ran out of cash.

Most of Vicor's management team, including four of the Petitioning Creditors, departed in December, 2011, and the company has since been run by just one officer, its interim CEO and chief scientist James Skinner.  Vicor has not conducted any real business operations or generated more than nominal revenue over the past year while its undisputed liabilities (including two classes of past-due convertible notes) have accrued to over $13 million.  Vicor was deactivated by the Florida Secretary of State in September, 2011, and has failed to keep current on its required SEC filings.

The Petitioning Creditors believe that, due to inept management and corporate waste, Vicor's valuable intellectual property is not being commercialized despite the considerable progress made by the company during its developmental stage.  In short, valuable technology is being wasted while Vicor has failed to raise capital and pursue viable financing opportunities to the detriment of creditors and stockholders.

The petitioners are 13 creditors, consisting of former management and the company's main independent consultants and vendors, holding fixed, non-contingent undisputed claims against Vicor that have been acknowledged by Vicor in its public filings and other documents.  Faced with over $13 million in total undisputed liabilities and no significant operating revenue in the past year, Vicor clearly is not paying its debts as such debts become due.  The Petitioning Creditors believe that Vicor has no legitimate defenses to the involuntary petition under 11 U.S.C. § 303, and have credible reasons to believe that Vicor's sole officer, James Skinner, is attempting to strip Vicor of its valuable intellectual property while leaving creditors unpaid.

For these reasons, the Petitioning Creditors believe that compelling cause exists for the Court to appoint an interim trustee under section 303(g) to harness and protect Vicor's valuable intellectual property in order to avoid loss to the estate and irreparable harm to Vicor and its creditors.  If the Court is not inclined to appoint an interim trustee, however, the petitioners believe that, at the very

---

Vissman, Santiago Guzman, Riley Vanhofwegen, Opus Financial Group and Giordano & Associates Co., Inc.

least, the Court should exercise its discretion under section 303(f) to restrict the rights of Vicor to transfer or dispose of its intellectual property and related products pending disposition of the involuntary petition.

## BACKGROUND

### Procedural History

1.      On December 7, 2012, the 13 Petitioning Creditors, which consist of Vicor's former management team and its major outside consultants and vendors, filed an involuntary petition against Vicor under chapter 7 of the United States Bankruptcy Code.  No order for relief has been entered and no trustee has been appointed.

### Vicor Background

2.      Vicor is a medical diagnostics company formed in 2000 and headquartered in Boca Raton, Florida, focused on developing and commercializing medical diagnostic products using its patented PD2i® algorithm and software, which enables physicians to accurately risk stratify a specific target population to predict future pathological events, such as autonomic nervous system dysfunction, cardiac mortality (either from arrhythmic death or congestive heart failure) and imminent death from trauma.   In 2011, Vicor was commercializing two diagnostic products which employ software using the PD2i® algorithm: the PD2i Analyzer$^{TM}$ (sometimes referred to as the PD2i Cardiac Analyzer$^{TM}$) and the PD2i-VS$^{TM}$ (Vital Sign), and held three U.S. registered trademarks for these products.  The PD2i® algorithm patents and related intellectual property are actually owned by Vicor's two wholly-owned subsidiaries, Nonlinear Medicine, Inc. ("NMI") and Stasys Technologies, Inc. ("STI").

3.      The PD2i Analyzer$^{TM}$ received section 510(k) marketing clearance from the U.S. Food and Drug Administration ("FDA") in December, 2008, and sales of this product commenced in January, 2010.  By the end of 2010, Vicor had contracted 27 independent sales representatives in

over 30 states and the District of Columbia while hiring in-house sales personnel in selected states to supplement this outside sales force.

4.      The principal customers for Vicor's PD2i Analyzer™ were physicians specializing in family practice and internal medicine, as well as endocrinologists. In addition to its domestic marketing strategy, Vicor marketed its products internationally through foreign distribution partners, and in fact had distribution agreements for the People's Republic of China, Australia, Israel and Palestine.

5.      From 2003 through 2011, Vicor raised over $30 million in capital and achieved the following significant milestones:

- Obtained domestic and international patents for the PD2i® algorithm.
- Obtained two FDA section 510-K marketing clearances in 2008 and 2011.
- Developed an innovative and proprietary internet delivery-based system for analysis;
- Commenced commercial sales to physicians in the United States.
- Developed a second generation ECG and laptop collection device with a major equipment manufacturer.
- Secured an exclusive distribution agreement with the People's Republic of China pending completion of Chinese regulatory review and approval.
- Secured an exclusive distribution agreement for Israel and Palestine pending completion of Israeli Health Authority review, though the technology is in use by the Israeli Defense Force and the prestigious Wingate Institute.
- Conducted numerous clinical trials at major universities for various modalities, including concussion, anesthesia, ER triage and others.
- Gained recognition of the PD2i Analyzer for use in a wide range of modalities and disease states with over 50 peer-reviewed published manuscripts and poster presentations at the American Heart Association, American College of Cardiology and Society for Critical Care Medicine.
- Entered into a development and licensing agreement with Zoll Medical Corp., a leading medical device manufacturer, which was terminated after the departure of the former management team.

6.      Unfortunately, however, Vicor's start-up developmental expenses were very high and depleted the company's working capital by 2011.  For example, Vicor's research and development expenses for 2009-2010 alone totaled approximately $1.6 million. These expenses included laboratory supplies, hardware costs, programming and software costs, sponsored research activities,

salary and fringe benefits for employees engaged in research, development, clinical and regulatory activities, as well as clinical trial costs, clinical and regulatory consulting, and manufacturing costs.

7.      In 2010 and 2011, a series of financings were planned that could have enabled Vicor's success but an internal dispute between the shareholders, board of directors and management resulted in a shareholder derivative action filed against Vicor and its directors.  This lawsuit was ultimately settled but, in the opinion of former management who are among the petitioners, it prevented consummation of the financing.  As a result, Vicor ran out of cash in or around May, 2011.  After working from June, 2011 through December, 2011 without pay, most of the Vicor management team (including four of the Petitioning Creditors) resigned in December 2011, out of frustration with the Board and the circumstances that gave rise to the shareholder derivative action.

8.      In March, 2011, Vicor had 16 employees and engaged the services of several outside consultants.  Thirteen of these employees were engaged in executive, administrative, business development, sales, marketing and intellectual property functions, and three were engaged in research, development and clinical/regulatory activities.  Upon information and belief, Vicor is now being operated solely by its interim CEO and only remaining officer, James Skinner, and its only business activity is to service those few physicians who are still using the company's diagnostic products.

9.      The Petitioning Creditors believe that Vicor has no working capital or financing prospects, and that its only assets of significant value are its patented and trademarked intellectual property now being wasted rather than developed and marketed.  Vicor was deactivated by the Florida Secretary of State in September, 2011 (see www.sunbiz.org), and, upon information and belief, its vendors have not been paid in 18 months.  Vicor is not current in any of its required SEC filings and has failed to formally communicate with its shareholders.  Upon information and belief, Vicor has over $13 million in undisputed liabilities, including two classes of convertible notes, all of

which are significantly past due.   The sworn declaration of Mr. David H. Fater, a petitioning creditor and Vicor's former CEO, attesting to the background facts and circumstances described above, is attached hereto as **Exhibit A**.  A copy of Vicor's last SEC filing – its Form 10-Q filed December 8, 2011 – is attached hereto as **Exhibit B**.

### Skinner's Plan to Strip Vicor of its Intellectual Property

10.     The Petitioning Creditors have good reason to believe that James Skinner is attempting to transfer Vicor's valuable intellectual property out of Vicor and into a new company while leaving creditors unpaid.  On November 19, 2011, an e-mail was sent by or on behalf of Skinner to a select group of unspecified recipients, some of whom presumably were selected Vicor stockholders and creditors, outlining the terms of this plan.  This e-mail, a copy of which is attached hereto as **Exhibit C**, clearly reflects Skinner's intent to strip Vicor of its valuable intellectual property, by transferring it to a "Newco" entity in which his selected group of Vicor stockholders will receive shares while others are left out based upon his unilateral determination of "cautious (i.e., tortious) interference," to the severe detriment of Vicor creditors.

11.     If this valuable intellectual property is transferred out of Vicor and lost to the estate, which appears to be a significant risk, creditors will no doubt suffer irreparable harm since this property is Vicor's only real value.

### RELIEF REQUESTED

12.     The Petitioning Creditors seek appointment of an interim trustee pursuant to 11 U.S.C. § 303(g) to preserve and protect Vicor's intellectual property pending the disposition of the involuntary petition, and avoid the irreparable harm and loss to the estate that creditors will suffer if this valuable property is transferred out.  The Petitioning Creditors request that the bond requirement under Federal Rule of Bankruptcy Procedure 2001(b) be waived in this case for the reasons described below.   In the alternative, the Petitioning Creditors seek to restrict Vicor's rights to

transfer or dispose of its intellectual property under 11 U.S.C. § 303(f).

**I.      Legal Standard for Appointment of Interim Trustee Under Section 303(g)**

13.     Section 303(g) provides:

> (g)  At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

11 U.S.C. § 303(g).

14.     "Section 303(g) provides a remedy to prevent an alleged debtor dissipating his or her assets by allowing a party in interest to seek appointment of an interim trustee during the involuntary 'gap period.'" *In re Levin*, case nos. 10-27946-RBR, 10-33696-RBR, 2011 WL 1469004, at *1-2 (Bankr. S.D. Fla. April 15, 2011) (Ray, J.).  Courts have directed the appointment of an interim trustee where necessary to protect and preserve property of the estate "by preventing concealment, waste or loss of assets by the alleged debtor, or preventing irreparable harm which would likely result during the gap period." *Id.* (citing *In re DiLorenzo*, 161 B.R. 752, 754 n.8 (Bankr. S.D.N.Y. 1993)). *See also In re R.S. Grist Co.*, 16 B.R. 872, 873 (S.D. Fla. 1982) (affirming bankruptcy court decision that "the appointment of an interim trustee is necessary to preserve the assets of the estate for the [d]ebtor's creditors, specifically to prevent diversion of assets from the estate without adequate consideration being received therefor"); *In re Alpine Lumber & Nursery*, 13 B.R. 977, 979 (Bankr. S.D. Cal. 1981) (appointing interim trustee to prevent loss of assets).

15.     In considering whether to appoint an interim trustee under section 303(g), courts have sought to balance the harm to creditors against the potential damage to the alleged debtor's business, or otherwise to prevent irreparable harm that may result during the involuntary "gap period." *See DiLorenzo*, 161 B.R. at 754 n.8; *In re James Plaza Joint Venture*, 62 B.R. 959, 961 (Bankr. S.D.

7

Tex. 1986) (appointing interim trustee due to concern that the funds would be disposed of, distributed, or dissipated); *In re Reed*, 11 B.R. 755, 757 (Bankr. S.D. W.Va. 1981) (same). This view is supported by the legislative history, which reflects that an interim trustee should be appointed if it is shown that the alleged debtor would "attempt to abscond with assets, dispose of them at less than their fair market value or dismantle his business, all to the detriment of its creditors." H.R. Rep. No. 95-595, at 819 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6279.

## II.   Compelling Reasons Exist for Appointment of Interim Trustee

16.   In this case, the immediate appointment of an interim trustee is necessary to avoid the loss to the estate and irreparable harm inflicted upon creditors if Vicor's intellectual property is transferred out of their reach.

17.   The potential harm to creditors outweighs any possible harm to Vicor, which has not operated any substantial business for the past year, and in fact was deactivated by the Florida Secretary of State in September, 2012. Vicor has represented to the Florida Secretary of State that it is no longer conducting business and cannot now argue that there is some ongoing business that would be harmed by the appointment of an interim trustee.

## III.   The Court Can and Should Waive Rule 2001(b) Bond Requirement

18.   Federal Rule of Bankruptcy Procedure 2001(b) provides that "[a]n interim trustee may not be appointed under this rule unless the movant furnishes a bond in an amount approved by the court, conditioned to indemnify the debtor for costs, attorney's fees, expenses, and damages allowable under § 303(i) of the Code." Fed. R. Bankr. P. 2001(b). Though this bond condition appears to be mandatory, a close reading of Rule 2001(b) shows that it is not. The express purpose of the bond is to indemnify the alleged debtor for any amounts recoverable under section 303(i), which sanctions are available only in the event of dismissal of the petition and, in any event, are discretionary and not mandatory. *See* 11 U.S.C. § 303(i) ("If the court dismisses a petition under this

8

section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court *may* grant [sanctions against the petitioners] ….") (emphasis added).

19.     In this case, the 13 petitioning creditors hold claims attested to as fixed, non-contingent and undisputed. *See* ECF # 1.  Upon information and belief, Vicor has over $13 million in total unpaid debt and has conducted minimal business operations over the past year.  It appears likely, therefore, that in the event of a contested petition the Petitioning Creditors will ultimately be able to prove their eligibility under section 303(b) and that Vicor is generally not paying its undisputed debts as such debts become due under section 303(h).  For these reasons, the risk of dismissal and any resulting sanctions appear sufficiently remote so that a bond should not be a necessary condition to the appointment of an interim trustee.

20.     Another reason for the Court to waive the bond requirement is that Vicor has been deactivated by the Florida Secretary of State and is not conducting any business operations that would be damaged by this involuntary bankruptcy proceeding.  The policy reasons for requiring a bond as a condition to appointing a trustee simply do not exist in this case.  In another recent case, the Court waived the Rule 2001(b) bond condition under similar circumstances. *See In re CLSJ III IV, Inc.*, case no. 12-30081-EPK, ECF # 13 (Bankr. S.D. Fla. Aug. 22, 2012) (Kimball, J.) ("Because the Alleged Debtor likely will suffer little or no injury as the result of the appointment of an interim trustee and the Alleged Debtor is unlikely to be entitled to damages under 11 U.S.C. § 303(i), but parties in interest may be irreparably harmed absent such appointment, as more fully addressed on the record, the Court finds that the Petitioning Creditors need not post a bond in connection with appointment of an interim trustee.").

**IV.    In the Alternative, the Court Can and Should Restrict Vicor's Rights to Dispose of its Intellectual Property Under 11 U.S.C. § 303(g)**

21.    Section 303(f) provides:

(f)  Notwithstanding section 363 of this title, ***except to the extent that the court orders otherwise***, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.

11 U.S.C. § 303(f) (emphasis added).  Bankruptcy courts have held the above-emphasized provision of section 303(f) allows them to modify the alleged debtor's otherwise unrestricted right to use and dispose of its property (though any such disposition would not be insulated from subsequent disgorgement to a trustee under section 549(a)) to the extent appropriate under the circumstances. *See, e.g., In re Dilley*, 378 B.R. 1, 8 (Bankr. D. Me. 2007).

22.    The Petitioning Creditors obviously would prefer, and believe that sufficient cause exists for, appointment of an interim trustee under section 303(g).  If the Court is not inclined to appoint a trustee, however, the Petitioning Creditors believe that the Court should at least enter an order exercising its discretion under section 303(f) to restrict Vicor's right to transfer or dispose of its intellectual property related to the PD2i® algorithm and derivative diagnostic products.  The Petitioning Creditors, which include Vicor's former CEO, CFO and other officers, believe strongly based upon their intimate familiarity with Vicor and its assets that substantially all of the company's value is contained in this intellectual property.

**CONCLUSION AND LOCAL RULE 9075-1 CERTIFICATION**

23.    For the foregoing reasons, the Court should appoint an interim trustee under section 303(g) and waive the Rule 2001(b) bond requirement or, in the alternative, restrict Vicor's rights to transfer or dispose of its intellectual property under section 303(f).

24.    The Petitioning Creditors believe that an emergency hearing on this motion is

necessary to avoid direct, immediate and substantial harm to the Petitioning Creditors arising from the risk of Vicor's valuable intellectual property being transferred or disposed of.  Due to the nature of this emergency, the Petitioning Creditors do not believe it practicable to resolve this matter without a hearing and respectfully request that the "bona fide effort to resolve the matter without hearing" certification requirement of Local Rule 9075-1(B) be waived in respect of this motion.

WHEREFORE, the Petitioning Creditors respectfully request that the Court (i) appoint an interim trustee under section 303(g) and waive the Rule 2001(b) bond requirement; or, in the alternative, (ii) restrict Vicor's rights to transfer or dispose of its intellectual property under section 303(f); and (iii) grant such other and further relief as the Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing motion was filed electronically and served by first class U.S. Mail, postage prepaid, upon each of the parties identified on the attached service list (and by electronic mail to those parties with e-mail addresses listed, and also by facsimile and overnight mail where indicated), and by Notice of Electronic Filing upon each of the parties and counsel identified on the CM/ECF service list maintained by the Court for this case, on December 11, 2012.

Dated: December 11, 2012

Respectfully submitted,

MANCUSO LAW, P.A.
*Counsel for Petitioning Creditors*
Boca Raton Corporate Centre
7777 Glades Rd., Suite 100
Boca Raton, Florida 33434
Tel: 561-245-4705
Fax: 561-245-4639
E-mail: ngm@mancuso-law.com

By: /s/ *Nathan G. Mancuso*
Nathan G. Mancuso, Esq.
Florida Bar No. 174254

### SERVICE LIST

Vicor Technologies, Inc.
2200 Corporate Blvd. NW, Suite 401
Boca Raton, FL 33431
**(By Overnight Mail)**

Vicor Technologies, Inc.
c/o James E. Skinner
399 Autumn Drive
Bangor, PA 18013
Fax: (570) 897-7529
E-mail: james.e.skinner@gmail.com
**(By Overnight Mail, Fax, E-Mail)**

David H. Fater
c/o ALDA & Assocs. Int'l, Inc.
3651 FAU Blvd., Suite 400
Boca Raton, FL 33431
E-mail: dfater@alda-associates.com

Richard M. Cohen
c/o ALDA & Associates International, Inc.
3651 FAU Blvd., Suite 400
Boca Raton, FL 33431
E-mail: rcohen@alda-associates.com

Target Health, Inc.
261 Madison Avenue, 24th Floor
New York, NY 10016
E-mail: julesmitchel@targethealth.com

Robin Schoen Public Relations
26 Penn Street
Newtown, PA 18940
E-mail: rschoen@robinschoenpr.com

Sclafani & Associates, P.A.
110 Southeast Sixth Street, Suite 1970
Ft. Lauderdale, FL 33301
E-mail: tds@selectlitigation.com

T.J. Bohannon, Inc.
3600 Duberry Court
Atlanta, GA 30319
E-mail: tjbo@bellsouth.net

Opus Group Financial
P.O. Box 7
Pound Ridge, NY 10576
E-mail: jg@opusgroupfinancial.com

Giordano & Co., Inc.
P.O. Box 7
Pound Ridge, NY 10576
E-mail: jg@opusgroupfinancial.com

Riley Vanhofwegen
203 Via Montego
San Clemente, CA 92672
E-mail: rileyvan@hotmail.com

Jerry M. Anchin
2895 N.E. 32nd Street, # 208
Ft. Lauderdale, FL 33306
E-mail: jerrya12@gmail.com

Dr. David Krasnow
8907 Wilshire Blvd., Suite 300
Beverly Hills, CA 90211
E-mail: drkrasnow36@gmail.com

Christopher Vissman
1718 Danforth Park Close
Brentwood, TN 37027
E-mail: medtechnologies@bellsouth.net

Santiago Guzman
Francisco de Grellana y Camino del Bosque
Urbanizacion "El Vinedo" Casa 6
Cumbaya, Quito, Ecuador
E-mail: sguzmanp@interactive.net.ec

Office of the U.S. Trustee
51 SW 1st Avenue, Room # 1204
Miami, FL 33130
E-mail: USTPRegion21.MM.ECF@usdoj.gov