[Tagged]



**ORDERED in the Southern District of Florida on April 5, 2013.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| **In re:** | **CASE NO. 12-39329-EPK** |
| **VICOR TECHNOLOGIES, INC.,** | **CHAPTER 7** |
| **Alleged Debtor.** | |
| _____/ | |

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
### AND DIRECTING ENTRY OF ORDER FOR RELIEF

This case was commenced on December 7, 2012 by the filing of an involuntary

chapter 7 petition against alleged debtor Vicor Technologies, Inc. ("Vicor"). The thirteen

petitioning creditors (the "Petitioning Creditors") are:

> David H. Fater
> Richard M. Cohen
> T.J. Bohannon, Inc.
> Target Health, Inc.
> Robin Schoen Public Relations
> Opus Group Financial
> Giordano & Co, Inc.
> Sclafani & Associates, P.A.
> Jerry M. Anchin
> Riley Vanhofwegen

David Krasnow
Santiago Guzman
Chris Vissman

In response to the involuntary petition, on January 9, 2013, Vicor filed its *Alleged Debtor, Vicor Technologies, Inc., Motion to Dismiss Involuntary Petition, or, Alternatively, Motion for Indemnity Bond, or, Alternatively, for Abstention and for Other Relief, Including, Upon Dismissal the Entry of an Order Awarding Compensatory Damages, Punitive Damages, Attorney's Fees, and Costs for a Bad Faith Involuntary Bankruptcy Filing* [ECF No. 34] (the "Motion to Dismiss").

On January 14, 2013, the Petitioning Creditors filed their *Petitioning Creditors' Motion for Summary Judgment* [ECF No. 37] (the "Motion for Summary Judgment"), arguing that there is no genuine issue of material fact on any matter relevant to entry of an order for relief in this case. Vicor filed a response to the Motion for Summary Judgment [ECF No. 67]. The Petitioning Creditors filed their reply in support of their Motion for Summary Judgment [ECF No. 69]. Thus, the Motion for Summary Judgment is fully briefed and ripe for adjudication.

In the meantime, after a hearing on the Motion to Dismiss, the Court directed Vicor to file an answer to the involuntary petition. Vicor filed its answer and affirmative defenses on January 29, 2013 [ECF No. 60]. Vicor's answer and affirmative defenses would require an evidentiary hearing. Prior to setting an evidentiary hearing in this case, the Court finds it appropriate to rule on the Motion for Summary Judgment.

Pursuant to agreement of the parties and solely for purposes of the Motion for Summary Judgment, at this time the Court limits its analysis under 11 U.S.C. § 303(b) to the alleged claims of five of the thirteen Petitioning Creditors—David H. Fater, Richard M.

2

Cohen, T.J. Bohannon, Inc., Christopher Vissman, and Jerry M. Anchin.[1]  The Petitioning Creditors argue that the claims of these parties satisfy all requirements of 11 U.S.C. § 303(b), and that Vicor was generally not paying its debts as they became due, and so an order for relief is warranted under 11 U.S.C. § 303(h)(1).  Vicor argues that the claims presented by four of these five Petitioning Creditors are in bona fide dispute and that they may not be counted as petitioning creditors for purposes of the involuntary petition commencing this case, and Vicor disputes that it was not paying its debts as they became due.

**Summary Judgment Standard**

Fed. R. Civ. P. 56(a), made applicable to this matter by Fed. R. Bankr. P. 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The moving party has the burden of establishing that there is an absence of any genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets that

---

[1] If this case had gone to trial, the Court would have considered evidence relevant to claims of the other eight Petitioning Creditors.  Because the claims of the five Petitioning Creditors now before the Court are sufficient to support entry of an order for relief in this case, the Court need not consider the claims of the other Petitioning Creditors.

burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted). "A party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings. Rather, its responses, either by affidavits or otherwise as provided by the rule, must set forth specific facts showing that there is a genuine issue for trial. A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* at 1576-77 (*citing Anderson*, 477 U.S. at 252).

**Analysis**

A court will enter an order for relief in an involuntary case if (1) the requisite number of eligible petitioning creditors file a petition and (2) the debtor is generally not paying such debtor's debts as they become due unless such debts are the subject of a bona fide dispute as to liability or amount. 11 U.S.C. §§ 303(b), (h). The Court first considers whether Vicor was not generally paying its debts as such debts came due as required under § 303(h).

Section 303(h) provides, in relevant part:

> (h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if--

> (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount.

"The courts apply a flexible totality of the circumstances test in determining whether a debtor is 'generally not paying' his debts, which focuses on the number of unpaid

4

claims, the amount of the claims, the materiality of nonpayment and the overall conduct of the debtor's financial affairs." *In re Huggins*, 380 B.R. 75, 83 (Bankr. M.D. Fla. 2007).

In its response to the Motion for Summary Judgment, and in its pending Motion to Dismiss, Vicor presents no material argument or evidence to negate the Petitioning Creditors' allegation that Vicor is generally not paying its debts as such debts become due. Exhibit A to the Motion for Summary Judgment, an accounts payable ledger for Vicor as of January 31, 2012 that is discussed more fully below, indicates that a number of claims, including those of the Petitioning Creditors, have remained unpaid for an extended period of time. Even if some of the claims of the Petitioning Creditors are subject to bona fide dispute, Vicor does not even suggest that the bulk of its accounts payable are so disputed.

Vicor's publicly reported financial information presents an even more stark picture of Vicor's financial distress. Vicor's Form 10-Q for the quarter ended September 30, 2011 shows current assets of $353,000 and current liabilities of $11,947,000, or a ratio of current assets to current liabilities of only 0.029. A current ratio of less than 1.0 indicates an inability to meet current obligations with available cash and cash equivalents, a key indication that Vicor is unable to pay its obligations as they come due. Vicor's Form 10-Q shows that it had current assets of $1,646,000 and current liabilities of $1,614,000 only nine months prior to the reporting date, on December 31, 2010. During the same nine month period Vicor's accounts payable increased 175% from $1,166,000 to $3,217,000. The Form 10-Q shows that Vicor was experiencing an accelerating net loss during the period, coupled with a remarkable negative cash flow leaving the company with essentially no cash. This financial data indicates that Vicor was in a tail spin during the first three quarters of 2011. Vicor does not even suggest that its financial status improved after the period shown in its most recent Form 10-Q.

The narrative report contained in Vicor's Form 10-Q as of September 30, 2011 matches the financial data in describing a company near and perhaps beyond its last gasp. The financial data is reported on a going concern basis, meaning that management acknowledged more than a year prior to the petition in this case that Vicor may not survive. Management stated:  "The Company is in substantial arrears with its accounts payable, and no management salaries have been paid in the three months ended September 30, 2011.   The lack of working capital has severely restricted the Company's ability to implement its sales strategies.  The Company needs to continue to incur expenditures to further the commercial development of its products.  These matters raise substantial doubt about the Company's ability to continue as a going concern."  Management admits, several times, that Vicor was unable to pay its obligations as they came due.  The report states: "The Company is in technical default on both the 8% Subordinated Convertible Notes and the 10% Convertible Promissory Notes because of its inability to pay liabilities as they become due during the three months ended September 30, 2011."   The report lists numerous serious payment defaults on material debt obligations.  Management admitted that "[s]ince June 2011 the Company has been operating substantially without cash." Management acknowledged that Vicor's inability to raise capital was having a direct negative effect on its ability to generate business, which of course only deepened its financial woes.  As stated in the report, "Revenues have been negatively impacted in the marketplace by the Company's lack of resources and the substantial risk of its ability to operate as a going concern."  Vicor was then in dire need of additional capital to remain viable.  "The Company desperately needs additional sources of financing.  If such financing is not obtained, the Company may have to curtail its operations in December 2011 or be placed in involuntary bankruptcy by its creditors."  Apparently, Vicor was unable to find alternative financing or investors.

Based on the record before the Court, there is no reason to believe that Vicor's financial status improved since the period covered by its Form 10-Q for the period ending September 30, 2011. Vicor offers no contrary evidence. There is no material dispute that at the time of the filing of the petition in this case Vicor was not paying its debts as they became due. The requirements of § 303(h)(1) are satisfied in this case.

There appears to be no question that Vicor is an entity for which the involuntary provisions of the Bankruptcy Code was enacted. The question, then, is whether at least three of the Petitioning Creditors hold claims that satisfy the requirements of § 303(b).

11 U.S.C. § 303(b)(1) provides:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title--
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

The phrase "bona fide dispute" is not defined in the Bankruptcy Code. The majority of courts to consider the meaning of "bona fide dispute" apply an objective standard. *In re Huggins*, 380 B.R. 75, 82 & n.30 (Bankr. M.D. Fla. 2007) (collecting cases). "Because the standard is an objective one, an alleged debtor's subjective intent or belief is irrelevant, and the mere or conclusory denial of a claim's validity or amount is not sufficient to create a bona fide dispute." *In re Tamarack Resort, LLC*, No. 09-03911-TLM, 2010 WL 1049955, at *2 (Bankr. D. Idaho Mar. 17, 2010). This standard requires the court to "determine whether there is an objective basis for either a factual or a legal dispute as to the validity of debt." *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987). "However, 'the statute does not require the court to determine the outcome of any dispute, only its presence or absence. Only a limited analysis of the claims at issue is necessary.'" *Id.* (quotation omitted).

>In applying this standard, the petitioning creditor must establish a prima facie case that no bona fide dispute exists.  Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist.  Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden. The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute.  This does not mean that the bankruptcy court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the bankruptcy court may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists.

*In re Rimell*, 946 F.2d 1363, 1365 (8th Cir. 1991) (internal and external citations omitted).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended § 303 to provide that claims at issue must not be the subject of a bona fide dispute *as to liability or amount*. 11 U.S.C. § 303(b)(1) (emphasis added).  Public Law 109-8, § 1234 (Apr. 20, 2005), 119 Stat. 23, 204.  Prior to the amendment, a dispute as to the amount of some portion of the claim did not necessarily mean that the entire claim was disputed such that the petitioning creditor failed to satisfy § 303(b)(1).  For example, in *Focus Media*, the 9th Circuit explained that under its own case law, "even assuming there was an actual, non-theoretical dispute as to the precise amounts [] owed the petitioning creditors . . . such a dispute is relevant only if it takes the total debt below [the numerical threshold set forth in § 303(b)(1)]. *Focus Media, Inc. v. Nat'l Broadcasting Co. (In re Focus Media, Inc.)*, 378 F.3d 916, 925-26 (9th Cir. 2004).  The 9th Circuit disagreed that "an uncertainty or dispute as to amounts owed above [the numerical threshold set forth in § 303(b)(1)] can create a bona fide dispute as to the entire debt." *Id.*  The 9th Circuit explained its test as follows: "a dispute as to the amount of a claim gives rise to a bona fide dispute only when (1) it does not arise from a wholly separate transaction and (2) 'netting out the claims of debtors' could take the petitioning creditors below the amount threshold of § 303." *Id.* at 926 (*citing Chicago Title Ins. Co. v. Seko Inv., Inc. (In re Seko Inv., Inc.)*, 156 F.3d 1005, 1008 (9th Cir.

1998)); *see also IBM Credit Corp. v. Compuhouse Sys., Inc.*, 179 B.R. 474, 479 (W.D. Pa. 1995), *aff'd*, 85 F.3d 612 (3d Cir. 1996) ("it is clear that if at least a portion of the debt that is the subject of the petition is undisputed, the undisputed portion is sufficient to create a debt under Section 303(b)(1) not subject to a bona fide dispute").

It is generally accepted that the 2005 amendment to § 303(b)(1) changed this analysis so that a dispute as to any portion of a claim, even if some dollar amount would be left undisputed, means there is a bona fide dispute as to the amount of the claim and such claim cannot be counted to satisfy § 303(b)(1). *See, e.g., In re Excavation, Etc., LLC,* 09-60953FRA7, 2009 WL 1871682 (Bankr. D. Or. June 24, 2009) (2005 amendment overruled *Seko* and *In Focus* because if that rule "were to remain in effect, the 'and amount' language would be superfluous"); *In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 712 n.8 (Bankr. S.D.N.Y. 2007) ("As a result of the amendment, any dispute regarding the amount that arises from the same transaction and is directly related to the underlying claim should render the claim subject to a *bona fide* dispute") (*citing* Collier on Bankruptcy); *In re Orlinsky*, 06-15417-BKC-RAM, 2007 WL 1240207 (Bankr. S.D. Fla. Apr. 24, 2007); *but see In re DemirCo Holdings, Inc.,* 06-70122, 2006 WL 1663237 (Bankr. C.D. Ill. June 9, 2006) (holding that the 2005 amendment has no effect on analysis under existing case law).

Yet a single creditor may hold multiple claims against an alleged debtor. For purposes of § 303(b)(1), courts must independently assess each claim held by a creditor to determine whether a bona fide dispute exists as to each claim. *See In re Taub*, 439 B.R. 261 (Bankr. E.D.N.Y. 2010). When a creditor holds multiple claims, and some but not all of such claims are subject to bona fide dispute, this does not disqualify the creditor entirely. A claim of such creditor not subject to bona fide dispute may still be counted for purposes of § 303(b). *In re Cohn-Phillips, Ltd.*, 193 B.R. 757, 763 n.8 (Bankr. E.D. Va. 1996) ("The claims

of a holder of multiple claims are not dismissed merely because one of them is subject to a bona fide dispute.")

In its response to the Motion for Summary Judgment, Vicor does not contest the claim held by Christopher Vissman, a former employee of Vicor. According to his declaration, Mr. Vissman holds a claim, as of the date the involuntary petition was filed, in the amount of $42,257.75 plus interest, arising from a judgment for unpaid compensation, commission, and expenses.[2]  Mr. Vissman is a proper petitioning creditor under § 303(b)(1).

Thus, to satisfy § 303(b), the Petitioning Creditors need only establish that two of the remaining twelve Petitioning Creditors hold claims against Vicor that are not contingent as to liability and are not the subject of a bona fide dispute as to liability or amount. As noted above, by agreement of the parties, the Court's analysis at this stage of the litigation is limited to those five Petitioning Creditors, including Mr. Vissman, who were deposed prior to briefing on the Motion for Summary Judgment.

Each of the remaining four Petitioning Creditors considered in connection with the Motion for Summary Judgment—David H. Fater, Richard M. Cohen, T.J. Bohannon, Inc., and Jerry M. Anchin—states multiple claims against Vicor. These claims fall under the categories of unpaid compensation, unpaid reimbursable expenses, and/or unpaid loans. The Alleged Debtor disputes that any of these Petitioning Creditors qualify as petitioning creditors in this case.

In support of the Motion for Summary Judgment, each of the four Petitioning Creditors submitted declarations along with their respective employment or consulting agreements and documents supporting their claims for unreimbursed expenses. The movants also submitted Exhibit A to the Motion for Summary Judgment, which includes

---

[2] The judgment attached to Mr. Vissman's declaration was filed March 5, 2012 and grants Mr. Vissman default judgment against Vicor in the total amount of $39,296.57 with post-judgment interest accruing at the rate of 10% per annum.

twenty-three pages and comprises two documents.  The first document, containing twenty-one pages, is entitled "Vicor Technologies Inc.; Aged Payables; As of Jan 31, 2012."  The second document, containing two pages, is entitled "Vicor Technologies Inc.; Accounts payable, accrued compensation, and loans; 1/31/2012."  These two pages present data in the form of a table indicating the aging of the listed accounts payable, from a period prior to September 2011 and then by month through January 2012.  Amounts owing to Jerry Anchin, Ph.D., T.J. Bohannon, Inc., Richard Cohen, David Fater, and Christopher Vissman are indicated on the Aged Payables component of Exhibit A.  Each of these Petitioning Creditors is also indicated on the last two pages of Exhibit A.

The four Petitioning Creditors' whose claims are challenged by Vicor have the initial burden of presenting prima facie evidence that their claims are not subject to bona fide dispute. *See In re Rimell*, 946 F.2d 1363, 1365 (8th Cir. 1991).  They met this initial burden through their separate declarations, the documents attached thereto, and Exhibit A to the Motion for Summary Judgment.  The burden then shifts to Vicor to bring forth evidence tending to show that such claims are subject to bona fide dispute.  *See id.*

In response, Vicor submitted the Affidavit of Mr. James E. Skinner, who has held the position of interim CEO of Vicor Technologies, Inc. since January 1, 2012, and the resignation letters dated November 17, 2011 of each of these four Petitioning Creditors.  Vicor also takes issue with the evidence submitted by the Petitioning Creditors in support of the Motion for Summary Judgment.  The Court addresses each of Vicor's arguments in turn.

In his Affidavit, Mr. Skinner states, in relevant part, the following:

> 6.    As a corporate officer of the Alleged Debtor I dispute the validity and amounts of the claims made by Jerry M. Anchin, David H. Fater, Richard M. Cohen, and T.J. Bohannon, Inc.

7.      I believe and it is alleged that Jerry M. Anchin, David H. Fater, Richard M. Cohen, and T.J. Bohannon, Inc. acted in concert to destroy the financial structure of the alleged debtor.

8.      I believe and it is alleged that David H. Fater breached his fiduciary duty to Vicor Technologies, Inc. such that he would not be due any amounts claimed in his declaration.  I believe that the debt owed Mr. Fater is incorrect and that he has no legal cause of action for anything claimed in his declaration.

In addition, in paragraphs 9 and 10, Mr. Skinner states:

I believe and it is alleged that the debt owed [each of Mr. Anchin and Mr. Cohen] is incorrect and that he has no legal cause of action for anything claimed in his declaration.  I dispute the amount owed.

In paragraph 11, Mr. Skinner states:

I believe and it is alleged that the debt owed T.J. Bohannon is incorrect and that he has no legal cause of action for much of what is claimed in his declaration.  I dispute the amount owed.

To the extent Mr. Skinner asserts his beliefs as to the debts owed to and actions of these four Petitioning Creditors, such mere assertions and denials, without more, are not sufficient to meet Vicor's burden in opposition to the Motion for Summary Judgment.  As noted above, courts use an objective standard to determine whether there exists a "bona fide dispute as to liability or amount."  Mr. Skinner's beliefs are not relevant, either in connection with Vicor's burden in opposition to the Motion for Summary Judgment or in connection with Vicor's burden under § 303(b).

Mr. Skinner states that the four Petitioning Creditors acted to cause Vicor to fail. He also alleges that Mr. Fater breached his fiduciary duty to Vicor and that Vicor has litigation pending against Mr. Fater.  To the extent Mr. Skinner intends to state claims of Vicor against the Petitioning Creditors, he provides no evidence or even specific allegations of wrongdoing to support his vague contentions.  More importantly, Vicor does not explain how any such claims Vicor may have against the Petitioning Creditors cause the claims of

the Petitioning Creditors to be subject to bona fide dispute within the meaning of § 303(b).

A bona fide dispute to a particular claim may of course take the form of a challenge to the existence of the liability.  It may also take the form of a challenge to the amount due.  For example, for purposes of § 303(b) a claim for payment under a contract may be in bona fide dispute as a result of the parties' disagreement as to the amount owed.  Similarly, a claim of an alleged debtor against a petitioning creditor that arises from the same transaction that gave rise to a creditor's claim may constitute a bona fide dispute of the petitioning creditor's claim.  But that an alleged debtor may have a separate claim against a petitioning creditor, in spite of the fact that such claim could result in a setoff against the petitioning creditor's claim, does not place the petitioning creditor's claim in bona fide dispute. [3]  Vicor does not explain how the claims loosely outlined by Mr. Skinner negate the claims of the subject four Petitioning Creditors. Further, each of the four Petitioning Creditors has multiple claims against Vicor.  It is not clear if Vicor is arguing that its claims cause each of such claims to be in bona fide dispute, or only claims for unpaid compensation.[4]  Without more, Mr. Skinner's allegations do not place the four Petitioning Creditors' claims in bona fide dispute.

Vicor also argues that the documentation the Petitioning Creditors submitted in connection with the Motion for Summary Judgment raises a bona fide dispute as to liability

---

[3] To be more precise, a defense to a claim in the form of recoupment goes to the heart of the claim and results in a bona fide dispute of the claim.  *See Collier on Bankruptcy* ¶ 303.11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  But a defense to a claim in the form of an independent counterclaim does not in any manner challenge the original claim and so does not place the original claim in bona fide dispute.  *Id.*; *see also In re Mylotte, David & Fitzpatrick*, No. 07-11861, 2007 Bankr. LEXIS 2375 (Bankr. E.D. Pa. July 12, 2007).

[4] In this case, even if the vague assertions made by Mr. Skinner present claims that somehow implicate the subject Petitioning Creditors' employment agreements, the Court notes that the employment agreements of three of the four Petitioning Creditors addressed here, including Mr. Fater, provide for payment of compensation and benefits even if the employee is terminated for cause (including for willful gross neglect or willful gross misconduct).  The contracts themselves seem to prohibit a recoupment analysis.

or amount. Vicor points to a date printed on the bottom left of many of the pages of Exhibit A to the Motion for Summary Judgment, which date is different from the date in the heading of that document. Vicor argues that the Petitioning Creditors have at various times alleged different amounts for their claims, pointing to Exhibit A to the Motion for Summary Judgment, declarations filed by the Petitioning Creditors, and their resignation letters.

The fact that numerous pages of Exhibit A indicate the date the document was printed from electronic information does not call into question the accuracy of the information contained in the exhibit. Mr. Bohannon, in his declaration, explained that the date was simply the date he printed the document and that the data came from electronic files he received from Vicor. Vicor did not submit any conflicting records or any evidence to otherwise call into question the accuracy of the financial data presented in Exhibit A.

The payables listed in Exhibit A are stated as of January 31, 2012. The involuntary petition in this case was filed approximately eleven months later on December 7, 2012. The un-rebutted evidence presented in connection with the Motion for Summary Judgment leads to the conclusion that all of the obligations listed in Exhibit A remained outstanding on the petition date. But the converse does not follow from this statement. While it appears undisputed that none of the obligations shown in Exhibit A was paid in the interim, this does not mean that Vicor did not also incur additional debts that remained due on the petition date, including additional obligations to the parties listed in Exhibit A. Simply put, that a claim is not listed in Exhibit A as an account payable owed by Vicor on January 31, 2012 does not mean that Vicor was not liable for such claim when this case was commenced on December 7, 2012. The fact that certain of the Petitioning Creditors' claims are not indicated on Exhibit A is thus not dispositive.

Vicor argues that the figures shown on Exhibit A are internally inconsistent.   It argues that the amounts indicated in the first twenty-one pages of Exhibit A "do not match up with the accounts payable attachment on page 22 and 23 of the Motion."[5]   But looking only at the obligations indicated for the four Petitioning Creditors at issue here—David H. Fater, Richard M. Cohen, T.J. Bohannon, Inc., and Jerry M. Anchin—the amounts shown for each of these four Petitioning Creditors in the first twenty-one pages of Exhibit A are the same as the amounts shown in the table on pages 22 and 23 of Exhibit A.

Vicor also argues that the four subject Petitioning Creditors have previously alleged different amounts owed by Vicor and that this calls into question the amounts they now claim.  The evidence submitted in connection with the Motion for Summary Judgment does not support this argument.  As stated above, the fact that a claim is not listed in Exhibit A to the Motion for Summary Judgment does not mean that such claim does not exist.  The subject claim could have arisen in the period after the date of the report contained in Exhibit A and prior to the filing of this case.   Vicor presents no specific evidence to contradict the claims presented by the four Petitioning Creditors at issue here.   Likewise, the fact that certain of the Petitioning Creditors stated different amounts owing by Vicor in their resignation letters, tendered more than a year prior to the petition here, does not call into question the claims stated as of the petition date.   Each of the subject Petitioning Creditors submitted a declaration and a supplemental declaration spelling out in detail the basis for their claims.  Vicor provided no evidence contrary to their assertions.

Vicor's approach to defeating the Motion for Summary Judgment is wanting.  It is not sufficient, for purposes of overcoming a motion for summary judgment or for purposes of supporting the allegation that a claim is subject to bona fide dispute under § 303(b), to

---

[5] Because the Motion for Summary Judgment is only eleven pages long, the Court assumes that the reference to pages 22 and 23 refers to such pages in Exhibit A.

simply state that you do not agree.  Vicor must present evidence, in the form of an affidavit or documentation obtained through discovery, to show that there are material facts in dispute contrary to the allegations in the Motion for Summary Judgment.  Vicor presents no specific evidence to contradict any of the allegations made by the subject Petitioning Creditors.  While it is sometimes sufficient to defeat a motion for summary judgment by showing that the factual assertions made by the movant are unsupported, the arguments of the opponent must be supported by logic.  They must cause the Court to determine that the movant's arguments have no foundation and, like a house of cards, must fall.  But the documents pointed to by Vicor in opposition to the Motion for Summary Judgment do not create the kind of doubt necessary to the task.  Application of logic to the facts alleged by Vicor simply does not cause the Court to question the accuracy of the claims presented by the Petitioning Creditors.  Vicor failed to meet its burden in response to the Motion for Summary Judgment.

Even if Vicor's vague, generalized objections to the claims of the four subject Petitioning Creditors raised a bona fide dispute as to some claim held by each Petitioning Creditor, each such Petitioning Creditor holds at least one claim that was not challenged by Vicor or the challenge was facially inadequate.  Vicor's response to the claims alleged by the four Petitioning Creditors at issue here was a global response.  Vicor apparently assumed that each such Petitioning Creditor holds a single claim against Vicor, and that Vicor's generalized attack would result in the Court determining that there was an overall factual dispute for each Petitioning Creditor.  Yet it is obvious from the declarations filed by the subject Petitioning Creditors that each holds more than one claim against Vicor.  These claims fall into the categories of unpaid wages, unreimbursed expenses, and unpaid loans.  There is no reason for the Court to lump the various claims held by each Petitioning

Creditor together, as if they do not arise from separate obligations of Vicor.[6]  Even if Vicor's arguments on tangential factual matters were proper challenges to some of the claims of the subject Petitioning Creditors, the unrebutted evidence now before the Court shows that each of the Petitioning Creditors has at least one claim that may be counted for purposes of § 303(b).

Mr. Cohen's claims are the same as presented in Exhibit A to the Motion for Summary Judgment, which shows the aggregate amount owed on page 4 and shows the two claims making up the total amount due on page 22.  Even if Vicor presented evidence to show that some amount claimed by Mr. Cohen is in dispute, Mr. Cohen states two separate claims and either of those claims may be counted in determining whether he is the holder of a claim sufficient to satisfy § 303(b)(1).  As Mr. Cohen explains in his Supplemental Declaration, he has separate claims for unpaid wages and reimbursable expenses.  As far as the Court can tell, Mr. Skinner's declaration addresses only Mr. Cohen's claim for unpaid wages.  Other than Mr. Skinner's subjective, conclusory, and unsupported allegations as to Mr. Cohen's conduct, Vicor does not challenge Mr. Cohen's claims for reimbursable expenses.  Thus, even if there was a proper challenge to Mr. Cohen's claim for unpaid wages, he would be counted as a petitioning creditor under § 303(b)(1).

Similarly, Dr. Anchin presents three claims against Vicor, for unpaid salary, unreimbursed travel expenses, and unpaid loans.  Other than general statements that Dr. Anchin's claims are disputed and that he acted to harm Vicor, Vicor made no specific allegation tending to negate any of Dr. Anchin's claims.  Exhibit A to the Motion for Summary Judgment indicates a debt to Dr. Anchin of $5,439.30.  Dr. Anchin's resignation letter dated November 17, 2011 states this same amount as owing for unreimbursed travel

---

[6] Although the claims for unpaid salary and unreimbursed expenses both arise from the employment and consulting agreements, based on the evidence currently before the Court they appear to be independent claims against Vicor.

expenses and also states a sum owed for unpaid loans. At a minimum, Dr. Anchin's claim

for unreimbursed travel expenses and unpaid loans are not in bona fide dispute. Thus,

even if Vicor's unsupported arguments somehow place his claims for unpaid salary in bona

fide dispute, Dr. Anchin may be counted as a petitioning creditor in this case based on his

claims for unreimbursed expenses and unpaid loans.

David H. Fater also presents three claims against Vicor, for unpaid compensation,

unreimbursed expenses, and unpaid loans. Vicor's own accounts payable ledger, contained

in Exhibit A to the Motion for Summary Judgment, shows $18,781.60 owed to Mr. Fater.

This is the same amount claimed by Mr. Fater for unreimbursed expenses. Even if Vicor's

allegations could lead to the Court finding Mr. Fater's claims for unpaid salary in bona fide

dispute, Vicor does not dispute Mr. Fater's claims for unreimbursed expenses and unpaid

loans. Mr. Fater's claims for unreimbursed expenses and unpaid loans are sufficient to

count him as a petitioning creditor in this case.

In this case, T.J. Bohannon, Inc. acts through its principal Thomas J. Bohannon.

Vicor argues that there is confusion as to whether Mr. Bohannon, personally, or T.J.

Bohannon, Inc. is the proper creditor on some or all of the claims presented. Yet the

evidence currently before the Court makes clear which claims are held by T.J. Bohannon,

Inc. and which claims are held by its principal. Vicor and T.J. Bohannon, Inc. entered into

a Consulting Agreement providing for Thomas J. Bohannon to act as chief financial officer

of Vicor. The claim of unpaid salary and unreimbursed expenses is held by the entity, T.J.

Bohannon, Inc. The resignation letter tendered by T.J. Bohannon, Inc. to Vicor, dated

November 17, 2011, clearly presents this claim on behalf of the entity, consistent with the

consulting agreement. The resignation letter supports the conclusion that Mr. Bohannon

made a personal loan to Vicor. Mr. Bohannon submitted his Supplemental Declaration as

president of T.J. Bohannon, Inc. In the Supplemental Declaration, Mr. Bohannon provides

detail on the claims of T.J. Bohannon, Inc., stating claims for unpaid salary and unreimbursed expenses in the exact amounts shown in Exhibit A.  Mr. Bohannon also states that he personally made a loan to Vicor and is owed $11,500 on that loan.  The fact that Mr. Bohannon has a personal claim against Vicor has no impact on the Court's analysis of the claims held by T.J. Bohannon, Inc..  Even if Vicor's allegations could lead to the Court finding T.J. Bohannon, Inc.'s claim for unpaid salary in bona fide dispute, Vicor does not dispute the company's claim for unreimbursed expenses.  T.J. Bohannon, Inc.'s claim for unreimbursed expenses is sufficient to count it as a petitioning creditor in this case.

Even if Vicor's unsubstantiated objections to the claims of the four subject Petitioning Creditors raised a bona fide dispute as to some of the claims held by the Petitioning Creditors, each of David H. Fater, Richard M. Cohen, T.J. Bohannon, Inc., and Jerry M. Anchin holds at least one claim that was not disputed by Vicor.  This is an independent basis for granting the Motion for Summary Judgment.

David H. Fater, Richard M. Cohen, T.J. Bohannon, Inc., Jerry M. Anchin, and Christopher Vissman each hold a claim that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, and the aggregate of such claims exceeds the amount required under § 303(b)(1).

**Conclusion and Order**

For the foregoing reasons, the Motion for Summary Judgment will be granted and the Court will enter an Order for Relief in this case.

In its Motion to Dismiss, Vicor challenges the involuntary petition, seeks an order requiring the Petitioning Creditors to post an indemnity bond, and also asks that the Court abstain from or dismiss this case pursuant to 11 U.S.C. § 305(a).  Most of the relief

19

requested in the Motion to Dismiss is moot as a result of the Court granting the Motion for

Summary Judgment.  The only issue remaining is whether the Court should abstain from

or dismiss this case.  The Court will set a hearing to consider Vicor's request for abstention

or dismissal under § 305(a).

Accordingly, it is

**ORDERED AND ADJUDGED** that:

1.    The Motion for Summary Judgment [ECF No. 37] is GRANTED.

2.    The Clerk shall enter an Order for Relief in this involuntary case.

3.    The Motion to Dismiss [ECF No. 34] is DENIED except to the extent it

requests relief under 11 U.S.C. § 305(a).  The Court will hold a non-evidentiary hearing on

that component of the Motion to Dismiss at 9:30 a.m. on April 18, 2013 at the following

location:

Flagler Waterview Building
1515 N Flagler Dr Room 801 Courtroom B
West Palm Beach FL 33401

and will address at that time whether an evidentiary hearing is required.

###

Copies furnished to:

Nathan G Mancuso, Esq.

*Nathan G Mancuso, Esq. is directed to serve a copy of this Order on all appropriate parties
and to file a certificate of service with the Clerk of Court.*